IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SCGM, Inc. d/b/a Star Cinema Grill, Hollywood Palms Cinema, District Theater, and State Fare Restaurant, § § § § § Plaintiff § § v. § § Certain Underwriters at Lloyd's, § § Defendant. | Civil Action No. _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff SCGM, Inc. d/b/a Star Cinema Grill, Hollywood Palms Cinema, District Theater, and State Fare Restaurant files this Original Complaint against Defendants Certain Underwriters at Lloyd's over their anticipated refusal to provide insurance coverage under a clearly applicable **"Pandemic Event Endorsement"** in the wake of the Severe Acute Respiratory Syndrome Coronavirus 2 (SARS CoV-2) (a/k/a COVID-19) Pandemic. Upon information and belief, this case is one of first impression:

# I.
# PARTIES

1. Plaintiff **SCGM, Inc. d/b/a Star Cinema Grill, Hollywood Palms Cinema, District Theater, and State Fare Restaurant** is a hospitality and entertainment provider with its principal place of business located at 1650 Highway 6, Suite 170, Sugar Land, Texas 77478.

2. Defendant **Certain Underwriters at Lloyd's ("Lloyd's")** is a foreign insurance syndicate with a certificate of authority to engage in the business of insurance in the State of Texas. Under the terms of the policy of insurance at issue, Lloyd's has designated the Texas Commissioner of Insurance as its agent for service of process, and Mendes and Mount, LLP as its agent to accept such process from the Texas Commissioner of Insurance. Accordingly, Lloyd's can be served with process by serving the Texas Commissioner of Insurance, Agent for Service of Process of Certain Underwriters at Lloyd's, London, at 333 Guadalupe, Austin, Texas 78701. The Commissioner will forward citation and the petition with discovery to defendant by and through Mendes and Mount, LLP, 750 7th Avenue, New York, New York 10019. **ISSUANCE OF CITATION TO THE DEFENDANT VIA THE TEXAS COMMISSIONER OF INSURANCE IS REQUESTED.**

## II.
## JURISDICTION

3. The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

## III.
## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and because a substantial part of property that is the subject of this action is situated in this district.

## IV.
## FACTUAL BACKGROUND

**A. Lloyd's markets a "Pandemic Event Endorsement" specifically to insure against pathogen-related business-interruption events.**

5. At all relevant times, Plaintiff operated a chain of movie theaters and a restaurant, primarily in the Greater Houston Area, including Harris County and surrounding counties.[1]

---

[1] The Star Cinema Grill locations are located at 702 Baybrook Mall, Friendswood, Galveston County, Texas 77546; 1037 University Dr., College Station, Brazos County, Texas 77840; 2000 I-45N, Conroe, Montgomery County, Texas 77301; 8920 Fry Road, Cypress, Harris County, Texas 77433; 4811 Highway 6, Missouri City, Fort Bend County, Texas 77459; 22125 FM 1093, Richmond, Texas 77407; 1495 Lake Plaza Dr, Spring, Harris County, TX 77389; 114 Vintage Park Blvd., Houston, Harris County, Texas 77070, Spring, Texas 77389. District Theatres is located at 1020 W. Nasa Parkway #152, Webster, Harris County, Texas 77598. Hollywood Palms

6. Following the 2014 Ebola crisis, many insurance carriers made specific exclusions for Ebola and other communicable diseases and viruses. Lloyd's sought to take advantage of the exclusions in coverage by rolling out a Pandemic Event Endorsement that claimed to "fill in the gaps that [other insurers] creatively exclude or do not address" that may relate to future pandemics.

7. In exchange for a significant premium paid by the insured, Lloyd's Pandemic Event Endorsement purported to provide coverage for insureds who experience financial damages from business interruption during pandemics. In particular, Lloyd's claimed that its "stand alone business interruption" insurance "will cover business interruption along with extra expenses with crisis management that is crucial ***during*** pandemic events." (Emphasis added.) According to Lloyd's marketing material, this coverage affords a "strong defense against microscopic, but deadly threats."

8. Realizing that a future pandemic event could be catastrophic for its movie theater and restaurant business, Plaintiff added the Pandemic Event Endorsement to its business interruption policy for the period 6/21/19 to 6/21/20. Lloyd's issued Policy Certificate No. TNR 18 8275 (the "Policy"), containing the Pandemic Event Endorsement. Under the Pandemic Event Endorsement, Lloyd's

---

is located at 352 South Route 59, Naperville, Du Page County, Illinois 60540. The State Fare Restaurant is located at 947 Gessner, Suite B190, Houston, Harris County, Texas 77024. All of these addresses are "Covered Locations" under the Policy at issue.

agreed to provide up to $1 million of coverage for "Pandemic Events." A "Pandemic Event" is defined as "the announcement by a Public Health Authority that a specific Covered Location is being closed as a result of an Epidemic declared by the [Centers for Disease Control and Prevention] or [World Health Organization]." A true and accurate copy of the Pandemic Event Endorsement is attached hereto as Exhibit A and incorporated herein as if fully set forth.

### A. The SARS-CoV-2 ("COVID-19") Pandemic.

9. Severe acute respiratory syndrome ("SARS") is a viral respiratory disease of zoonotic origin that surfaced in the early 2000s caused by the first-identified strain of the SARS coronavirus ("SARS-CoV" a/k/a "SARS-CoV-1"). The scientific community eventually traced the source of the virus to a meat market in China through the intermediary of civets (small mammals) to cave-dwelling bats.[2]

10. In 2019, a variation (and/or mutation) of the coronavirus strain was discovered in Wuhan, China. According to the CDC, the source of the strain is once again a meat market where the virus has jumped from bats, through an intermediary animal, to humans.[3]

---

[2] Civets are small mammalian creatures that feed on bats. In 2002-03, civets sold for meat in Chinese markets carried the SARS-CoV-1 virus from horseshoe bats to humans. The resulting viral outbreak killed 774 people.

[3] https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html

11. The Coronavirus Study Group ("CSG") of the International Committee on Taxonomy of Viruses ("ICTV"), which is responsible for developing the official classification of viruses and taxa naming (taxonomy) of the Coronaviridae family, assessed the strain discovered in Wuhan, China. Based on phylogeny, taxonomy and established practice, the ICTV formally recognized the virus as a variation of SARS-CoV-1 and designated it as severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2).[4]

12. SARS-CoV-2 is the causative virus for the COVID-19 disease implicated in the ongoing 2019–2020 coronavirus pandemic.

13. On March 11, 2020, The World Health Organization ("WHO") declared the 2019-20 SARS-CoV-2 outbreak a pandemic (a widespread epidemic). That same day, Harris County Judge Lina Hidalgo issued a Declaration of Local Disaster for Public Health Emergency to allow Harris County to take measures to reduce the possibility of exposure to SARS-CoV-2.

14. On March 12, 2020, a Declaration of State of Disaster was issued by Texas Governor Abbott to take additional steps to prepare for, respond to, and mitigate the spread of SARS-CoV-2.

---

[4] https://www.nature.com/articles/s41564-020-0695-z

15. On March 16, 2020, President Trump acknowledged the gravity of the SARS-CoV-2 pandemic and introduced strict new guidelines to limit people's interactions, including that all Americans should avoid groups of more than 10 people.

16. Effective 8 a.m. on March 17, 2020, an order from Harris County Judge Hidalgo required all restaurants and bars to provide only carry-out, delivery or drive-thru services as allowed by law, and closed all nightclubs, lounges, taverns, and private clubs. Similar orders were issued by other counties in which Plaintiff operates on or about this time.

17. Therefore, on March 17, 2020, and in accordance with the public health recommendations and directives coming from federal, state and county officials, Plaintiff announced it would be closing all locations until the appropriate public authorities determine the danger from the coronavirus pandemic has passed and it is safe to reopen.

18. Any debate over whether or not Plaintiff was required to temporally close all of its Texas locations was quashed when, on March 19, 2020, Texas Governor Abbott issued a Public Health Disaster Declaration and Executive Order that, among other things, prohibited Texans from gathering in groups of ten or more

people, which constructively closed all of Plaintiff's Texas locations that exhibited movies and offered dine-in meals to the public.[5]

19. That same day, the Texas Commissioner of the Department of State Health Services issued a proclamation, pursuant to Texas Health and Safety Code § 81.002, which (1) declared a public health disaster for the entire State of Texas; and then (2) ordered that everyone in Texas "***shall act responsibly to prevent and control communicable disease***." The order then listed several standards of responsible action to "reduce and delay the spread of COVID-19," including:

- "Limit as much as possible close contact with other people. Stay six feet away."
- "Do not gather in social groups of more than ten (10) individuals."
- "Limit trips into the public to essential outings. Traveling to work, the grocery store, the pharmacy or to seek medical care would be considered essential trips."
- "Restaurants should not allow dine-in options, either inside or outside[.]"

**B.  Lloyd's anticipatorily repudiates Plaintiff's coverage.**

20. On March 18, 2020, Plaintiff, via its insurance broker, provided a notice of claim under the Policy to Lloyd's appointed agent for notice of claims: Professional Liability Insurance Services, Inc. ("PLIS").

---

[5] Plaintiff's single out-of-state location in Du Page County, Illinois was subject to a "stay home" order on March 19, 2020.

21. On or about March 18, 2020, Lloyd's agent responded to Plaintiff's broker with the following statement:

> "As a reminder, there is no coverage under the base TNR policy given Coronavirus COVID-19 is not a food borne illness, it's a respiratory illness. Additionally, *it is not covered under the Pandemic Event Endorsement as it is not a named disease on that endorsement*." (Emphasis added.)

22. Although Plaintiff has yet to receive a formal denial of coverage, the above statement from Lloyd's agent is clear: Lloyd's has no intention of providing coverage under its Pandemic Event Endorsement for the SARS-CoV-2 pandemic.

23. But Lloyd's coverage position is meritless. Section 4.56 of the Pandemic Event Endorsement specifically states that:

> "Covered Disease" is limited to the following pathogens, *their mutations, or variations* (emphasis added):
>
> . . .
>
> - Severe Acute Respiratory Syndrome-associated coronavirus (SARS-CoV) disease.

24. And it is clear from multiple statements from the WHO, CDC, ICTV, and the scientific community at large that the pathogen in question here (SARS-CoV-2) is a variation and/or mutation of SARS-CoV, which is a pathogen specifically listed in the Covered Disease section of the Policy, as quoted above.

9

**C.     Plaintiff seeks an expedited ruling on the applicability of the "Pandemic Event Endorsement" to avoid ruinous financial damages.**

25.     Because all of Plaintiff's locations are currently closed due to the SARS-CoV-2 pandemic, the proceeds that Plaintiff reasonably expected to receive from its pandemic event insurance carrier *during* this outbreak are essential to pay Plaintiff's fixed costs and other expenses at a time when no revenue is being earned from patrons of Plaintiff's dine-in movie theaters and restaurant business.

## V.
## CAUSE OF ACTION

26.     The acts and omissions of Defendant described in the foregoing paragraphs give rise to the following cause of action:

**A.     Declaratory Judgment of Coverage**

27.     Pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, Plaintiff seeks the following declarations to determine questions of actual controversy between the parties:

  a. That Lloyd's issued Policy Certificate No. TNR 18 8275, which insured the "Covered Locations" listed in footnote 1, *supra*;

  b. That the WHO declared an "Epidemic" as defined by Section 4.57(b) of the Pandemic Event Endorsement on March 11, 2020;

  c. That the Policy was in effect on March 11, 2020;

  d. That a "Pandemic Event" as defined by Section 4.59(b) of the Pandemic Event Endorsement occurred on March 17, 2020 as to

          Plaintiff's Harris County Covered Locations when Harris County Judge Hidalgo ordered the closing of all restaurants;

    e.    Alternatively, that a "Pandemic Event" occurred with respect to all of Plaintiff's Texas Covered Locations on March 19, 2020 when orders from the Texas Governor and Texas Commissioner of the Department of State Health Services together prohibited gatherings of ten or more people and dine-in restaurant service and mandated other social distancing measures;

    f.    That the SARS-CoV-2 pathogen is a "Covered Disease" under Section 4.56 of the Pandemic Event Endorsement.

**B.    Breach of Contract – Anticipatory Breach/Repudiation**

28.    Plaintiff incorporates the above-referenced paragraphs as if stated fully herein.

29.    The Policy constitutes a binding contract between Plaintiff and Lloyd's, which includes the terms set forth in the Pandemic Event Endorsement attached hereto as Exhibit A and incorporated herein as if fully set forth.

30.    Plaintiff fully performed its contractual obligations by paying all premium due under the Policy.

31.    Lloyd's repudiated and anticipatorily breached the Policy by communicating to Plaintiff that COVID-19 is not a "Covered Disease" under the Pandemic Event Endorsement.

32.    Lloyd's repudiation and breach of the Policy has resulted in damages to Plaintiff that Plaintiff is entitled to recover, as more specifically addressed below.

11

### C. Breach of Duty of Good Faith and Fair Dealing

33. Plaintiff incorporates the above-referenced paragraphs as if stated fully herein.

34. Lloyd's conduct constitutes a breach of the common-law duty of good faith and fair dealing owed to insureds in insurance contracts.

35. "Good faith and fair dealing" is defined as the degree and diligence which a man of ordinary care and prudence would exercise in the management of one's own business.

36. This tort arises from Texas law, which recognizes that a special relationship exists as a result of the unequal bargaining power between Plaintiff (the policyholder) and Lloyd's (the insurer).

37. Part of this unequal bargaining power results from the fact that Lloyd's, like other insurers, controls entirely the evaluation, processing, and denial of claims.

38. By immediately refuting coverage to Plaintiff's broker—here, solely on the purported basis that "COVID-19" is not itself listed in the Covered Disease section of the Policy—Lloyd's is attempting to read out the most important provision of that section: namely, that it covers all listed pathogens as well as their mutations and variants.

39. And Lloyd's certainly has no reasonable basis to immediately announce at this point in time that the current pandemic has not been caused by a mutation or

12

variation of any listed pathogen, especially when multiple sources in the scientific community already say it is.

40. Such facially meritless conduct – and with absolutely no supporting expert evidence – is simply egregious, especially in the midst of a pandemic where Plaintiff is relying on Lloyd's "Pandemic Event Endorsement" to mitigate Plaintiff's severe and ongoing business losses.

41. Indeed, on its face, Lloyd's conduct appears to be nothing more than an attempt to put insureds in a position where they will be forced to accept lowball settlement offers simply from the fear that their insurer will drag out proceedings well past the insured's ability to remain financially viable.

42. As the foregoing establishes, Lloyd's communication refuting coverage was, at best, a knee-jerk reaction. On information and belief, Lloyd's denial of coverage was also based on an internal, high-level directive to automatically deny all pandemic-related business-interruption-claims. Either way, Lloyd's denial was unreasonable and reflects a failure to adequately and reasonably investigate and evaluate Plaintiff's claim, even though Lloyd's knew, or should have known by the exercise of reasonable diligence, that its liability was reasonably clear under the circumstances. For these reasons, Lloyd's conduct as described herein constitutes a breach of the duty of good faith and fair dealing.

43. Lloyd's breach of the duty of good faith and fair dealing has resulted in damages to Plaintiff, that Plaintiff is entitled to recover, as set forth below.

### D. Gross Negligence and/or Malice

44. Plaintiff incorporates the above paragraphs as if stated fully herein.

45. Plaintiff is entitled to exemplary damages as a result of Lloyd's breach of duty as described above. When viewed objectively from the standpoint of Lloyd's at the time of the occurrence in question, Lloyd's conduct involved an extreme degree of risk, considering the probability and magnitude of the harm to others, or the risk of financial ruin to others, and of which Lloyd's had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safely, or welfare of others.

46. In the alternative, Lloyd's had specific intent to cause substantial harm to Plaintiff.

47. Each of the acts described above, together and singularly, was done knowingly and was a producing cause of Plaintiff's damages described herein.

## VI.
## DAMAGES

48. The business losses caused by the coronavirus pandemic are ongoing and causing an undue burden and hardship on plaintiff. In all probability, such losses will exceed the $1 million of insurance proceeds available under the Policy.

49. Lloyd's failure to promptly accept and pay Plaintiff's claim has caused and will continue to cause direct and consequential damages that in total will likely far exceed the limits of the Policy. Such damages are a direct result of Lloyd's mishandling of plaintiff's claims in violation of the law set forth above.

50. In particular, Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

51. For breach of contract, Plaintiff is entitled, at a minimum, to compensatory damages as measured by its covered losses under the Policy.

52. For breach of the common-law duty of good faith and fair dealing, Plaintiff is entitled, at a minimum, to all compensatory damages, including all forms of loss resulting from Lloyd's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount Lloyd's owes, and other direct and consequential damages, as well as exemplary damages.

## VII.
## ATTORNEY'S FEES AND COSTS

53. Plaintiff is entitled to recover its court costs and attorney's fees under 22 U.S.C. § 2202 as such an award is authorized by applicable Texas law for comparable actions. *See, e.g.*, TEX. CIV. PRAC. & REM. Code §§ 37.004, 37.005, 37.009; TEX. CIV. PRAC. & REM. CODE § 38.001.

## VIII.
## CONDITIONS PRECEDENT

54. All conditions precedent to recovery for all relief requested have been satisfied or waived.

## IX.
## JURY DEMAND

55. Plaintiff asserts its right under the Seventh Amendment to the U.S. Constitution and demands in accordance with Federal Rule of Civil Procedure 38 a trial by jury on all issues.

## IX.
## PRAYER

Plaintiff SCGM, Inc. requests that Defendant Certain Underwriters at Lloyd's be cited to appear and answer, and that declaratory judgment be entered in Plaintiff's favor against Defendant as stated herein, and that Plaintiff have judgment against Defendant for all actual, consequential, and special damages, as well as exemplary damages, and that Plaintiff recover its attorney's fees, costs of court, and all such other relief, general or special, legal or equitable, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**HAWASH CICACK & GASTON LLP**

By: /s/
Michael A. Hawash
Texas Bar No. 00792061
Federal Bar No. 18321
3401 Allen Parkway, Suite 200
Houston, Texas 77019
mhawash@hcgllp.com
713-658-9015 (main)
713-658-9004 (direct & facsimile)

**Attorney in Charge for Plaintiff**

OF COUNSEL:

Walter J. Cicack
Texas Bar No. 04250535
Federal Bar No. 8094
Hawash Cicack & Gaston LLP
3401 Allen Parkway, Suite 200
Houston, Texas 77019
wcicack@hcgllp.com
713-658-9003 (direct & facsimile)

Jeremy Gaston
Texas Bar No. 24012685
Federal Bar No. 26469
Hawash Cicack & Gaston LLP
3401 Allen Parkway, Suite 200
Houston, Texas 77019
jgaston@hcgllp.com
713-658-9007 (direct & facsimile)

Jeremy M. Masten
Texas Bar No. 24083454
Federal Bar No. 1411942
Hawash Cicack & Gaston LLP
3401 Allen Parkway, Suite 200
Houston, Texas 77019
jmasten@hcgllp.com
713-685-9005 (direct & facsimile)